# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE MANLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | No. 09 C 7298 |
| ILLINOIS DEPARTMENT OF | ) | |
| HEALTHCARE AND FAMILY | ) | |
| SERVICES., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions to dismiss. For the reasons stated below, we grant the motions to dismiss.

## BACKGROUND

Plaintiff Andre Manly (Manly) alleges that he is a citizen of the "State of the Moorish People Republic" (Moorish People Republic), which is allegedly a sovereign and tribal government, and that he is under the jurisdiction of the Moorish People Republic. Manly also alleges that he has made voluntary contributions to

Medicare and social security and that he provided child support for his child for fifteen years under the jurisdiction of the Circuit Court of Cook County, Illinois (Circuit Court). On January 12, 2009, a judge in the Circuit Court allegedly indicated that the judge did not have jurisdiction over Manly. After that date, Manly allegedly continued to pay child support "in accordance with the constitutional tribal guidelines of the Moorish People Republic and under the jurisdiction of its Department of Healthcare and Family Services." (Compl. 2). Manly alleges that such facts indicate that Defendant Illinois Department of Healthcare and Family Services (IDHFS) and Defendant Illinois Department of Employment Security (IDES) lack jurisdiction over him.

Manly also alleges that IDHFS and Defendant Illinois Department of IDES have taken action against him in spite of being notified that they do not have jurisdiction over Manly. Specifically, Manly alleges that on October 22, 2009, he received a letter from Defendant IDHFS, Licensing Project Office (IDHFS Licensing Project Office), dated October 10, 2009 and postmarked October 19, 2009, indicating that Manly's personal and professional licenses might be revoked due to Manly's failure to pay child support. Manly allege that the letter required him to respond within ten days of receiving notice, and that such a ten-day requirement intentionally did not allow Manly sufficient time to respond to the letter or participate in the

review of the matter with the IDHFS Licensing Project Office.

Manly alleges that he sent the IDHFS Licensing Project Office, Defendant Drake Sisti (Sisti), and Defendant Rosie Henry (Henry) a jurisdictional affidavit and tribal order on September 1, 2009, October 6, 2009, and October 7, 2009. Manly also alleges that on October 23, 2009, officials at the IDHFS Licensing Project Office refused to provide Manly with a review over the telephone until he disclosed his date of birth and social security number and refused to disclose their identities to Manly or acknowledge that they had received the jurisdictional affidavit and tribal order Manly sent. Defendant Robert Bell (Bell) allegedly acted as the agent for Sisti with respect to "mail delivery restricted for [] Sisti exclusively." (Compl. 3). In addition, Manly alleges that officials at the IDHFS Licensing Project Office offered no review or remedy and improperly characterized him as "uncooperative" in order to justify revoking his professional and personal licenses. (Compl. 5). According to Manly, the Licencing Project proceeded against him unreasonably in light of the notice he provided to it of his race and citizenship in the Moorish People Republic.

In addition, Manly alleges that he receives unemployment benefits (Benefits) from IDES and that his total weekly unemployment benefit is $244.00 per week. On October 29, 2009, Manly alleges he received a letter from Defendant Director of IDES (IDES Director) informing him that IDES planned to withhold $118 of his

Benefits each week for child support. Manly allegedly appealed the garnishment with the Appeals Offset Unit. When Manly appealed, IDES allegedly informed Manly that, as of August 2004, Manly also owed $1,832 in overpaid Benefits to IDES. According to Manly, he received no notice of any overpayment of Benefits until October 29, 2009, and he allegedly appealed IDES's determination related to the overpayment of Benefits immediately in letters to the IDES dated October 29, 2009 and November 3, 2009.

Manly alleges that on November 4, 2009, he was interviewed by Defendant Robert Acosta (Acosta), a Service Representative for IDES, regarding his eligibility to collect unemployment Benefits. Manly also alleges that, in spite of the notice stating that the purpose of the interview was to protect Manly's rights, Acosta admitted that the interview was actually "an interrogation" and made reference to the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966) (Compl. 9). Manly allegedly protested the interview process as unlawful and a violation of his due process rights, but Acosta allegedly offered no remedy. Manly includes in his complaint claims for violations of the Law of Nations or customary international law brought pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350, claims alleging violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, common law fraud claims, identity theft claims, civil

conspiracy claims, intentional infliction of emotional distress claims, due process and equal protection claims brought pursuant to 42 U.S.C. § 1983 (Section 1983), and claims alleging violations of the Fair Debt Collection Practices Act claims (FDCPA), 15 U.S.C. § 1692 *et seq*. Manly seeks $2,000,000.00 in compensatory damages and injunctive relief. IDHFS and the individually-named IDHFS employees have moved to dismiss all claims. IDES, IDES Director, and Acosta have also filed a motion to dismiss all claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*; *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor

of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946 (emphasis in original). For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.,* 322 F.3d at 946.

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting

in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

Since Manly is proceeding *pro se*, we have liberally construed his complaint in assessing the claims that he seeks to bring in the instant action. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000)(stating that "*pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers"). Defendants argue that Manly's claims should be dismissed based on the *Rooker-Feldman* doctrine, the Eleventh Amendment, and Manly's failure to state any claims upon which relief can be granted.

### I. *Rooker-Feldman* Doctrine

IDES, IDES Director, and Acosta argue that the *Rooker-Feldman* doctrine applies to Manly's claims. Under the *Rooker-Feldman* doctrine, a "party 'complaining of an injury caused by [a] state-court judgment'" is not permitted to "seek[] redress in a [] federal [district] court." *Golden v. Helen Sigman & Associates, Ltd.*, 611 F.3d 356, 362 (7th Cir. 2010)(quoting *Exxon Mobil Corp. v.*

*Saudi Indus. Corp.,* 544 U.S. 280, 291-92 (2005)); *see also Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010)(stating that "the *Rooker-Feldman* principle prevents a state-court loser from bringing suit in federal court in order effectively to set aside the state-court judgment and applies even if the state court judgment is erroneous or unconstitutional"). The *Rooker-Feldman* doctrine does not prevent a federal court from reviewing "claims that are independent of any state court proceedings" or "executive action, including decisions made by state administrative agencies." *Gilbert*, 591 F.3d at 900. However, if a plaintiff's "allegations cannot be separated from [a] state court's judgment, *Rooker-Feldman* acts as a jurisdictional bar." *Golden*, 611 F.3d at 362. Manly argues that *Rooker-Feldman* doctrine does not apply to his claims based on "legal exceptions to the *Rooker-Feldman* doctrine . . . cited by [Manly] in the motion." (Memo. 15).


A.  Manly's Claims Relating to Payment of Child Support

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a court can generally only consider the allegations in the complaint. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)(stating that "[w]hen ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint"). However, the court may take judicial notice of matters of public record, such as public court documents, and may consider such documents without converting the Rule 12(b)(6) motion to dismiss into a motion for summary judgment.

*Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994). Thus, the court can take judicial notice of the fact that Manly's obligation to pay child support arose from an agreed order (Order) entered in the Circuit Court on December 8, 1999, in case number 95 D 10429.

According to Manly, Defendants have violated his rights by garnishing his Benefits and threatening to revoke his professional licenses in spite of the fact that the Circuit Court has no jurisdiction over Manly and the fact that the Order is invalid because Manly entered into it under duress. Manly's arguments relating to the jurisdiction of the Circuit Court and the validity of the Order cannot be separated from the state court's judgment. In bringing the instant action, Manly is seeking to challenge the judgment of the Circuit Court in this court. In addition, Manly has not shown that any of the exceptions to the *Rooker-Feldman* doctrine are applicable in this case. *Taylor v. Fed. Nat'l Mortgage Assoc.*, 374 F.3d 529, 534 (7th Cir. 2004). Therefore, Manly's claims challenging the validity of the Order are barred by the *Rooker-Feldman* doctrine.


### B. Manly's Claims Relating to Overpayment of Benefits

Manly argues that he received no notice from IDES in 2004 relating to the overpayment of Benefits, and that therefore his rights have been violated by IDES's garnishment of Benefits based on such overpayment. As discussed above, the *Rooker-Feldman* doctrine does not apply to claims that are independent of any state

court proceedings or to judicial review of executive action, including decisions made by state administrative agencies. *Gilbert*, 591 F.3d at 900; *Golden*, 611 F.3d at 362. Manly alleges that IDES made the determination regarding the overpayment of Benefits. Manly also alleges that he appealed the determination with IDES and that a representative of IDES interviewed him in connection with his appeal. Manly further alleges that it was IDES that denied his appeal. Thus, there is no indication that Manly seeks to set aside any state court judgment or that Manly's claims relating to overpayment of Benefits relate to any state court judgment. Therefore, the *Rooker-Feldman* doctrine is inapplicable to Manly's arguments relating to IDES's determination regarding the overpayment of Benefits to Manly.


## II. Application of Eleventh Amendment to Manly's Claims

Defendants also argue that Manly's claims are barred by the Eleventh Amendment. Under the Eleventh Amendment, "states, as sovereigns in our federal system, will not be held amenable to suit in federal court without their consent." *Protestant Memorial Medical Center, Inc. v. Maram*, 471 F.3d 724, 728 n.3 (7th Cir. 2006). Thus, the Eleventh Amendment generally "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities. . . ." *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 695 (7th Cir. 2007). IDHFS and IDES are departments within the Illinois State government, 20 ILCS 5/5-15, and Defendants have not consented to suit.

However, Manly argues that the Eleventh Amendment does not bar his claims because there is diversity jurisdiction in this case, because he has sued the state agents in their individual capacities, and because he has requested injunctive relief.

## A.  Diversity Jurisdiction

Manly argues that because the court has jurisdiction based partly on diversity jurisdiction, the Eleventh Amendment does not bar his claims.  Regardless of whether a court has diversity jurisdiction, the Eleventh Amendment still bars claims brought against the state or state employees acting in their official capacities.  In addition, for the purpose of determining whether diversity jurisdiction exists, Manly's citizenship is based on his domicile.  *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002).  Manly alleges that he is domiciled in Palos Hills, Illinois.  Thus, regardless of Manly's status as a citizen of the Moorish People Republic, Manly is a citizen of Illinois for diversity purposes.  Since all Defendants are also citizens of Illinois, this court does not have jurisdiction over the instant action based on diversity.

## B.  State Agents Sued in their Individual Capacities

Manly also argues that the Eleventh Amendment does not bar his claims against the individually-named Defendants because he has sued the individually-named Defendants in their individual capacities, not in their official capacities.  We

note that nowhere in Manly's complaint does Manly indicate that he is suing the individually-named Defendants in their individual capacities and that, to the contrary, Manly alleges that the individually-named Defendants were "acting in the capacity of Illinois government officials." (Compl. 3). In addition, when a plaintiff sues a state official in his individual capacity, a court must consider "whether [the suit] may really and substantially be against the state." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001)(citations omitted). The Seventh Circuit has stated that a suit is against the state "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* (citation omitted). Defendants argue that the State of Illinois would be required to pay any judgment against the individually-named Defendants, and thus Manly's suit against the individually-named Defendants acting in their individual capacities is really a suit against the state. Further, a judgment against individually-named Defendants would effect the state's ability to properly administer benefits and restrain the state from collecting child support and Benefits overpayments from Manly. Based on the above, the Eleventh Amendment bars Manly's claims against the individually-named Defendants. Further, even if the Eleventh Amendment did not bar Manly's suit against the individually-named Defendants, as further discussed below, Manly has failed to state any claims upon which relief can be granted against the individually-named Defendants.

C.  Request for Injunctive Relief

Manly argues that this claims against individually-named Defendants acting in their official capacities are not barred by the Eleventh Amendment because Manly seeks injunctive relief in his complaint.  The Eleventh Amendment bars a plaintiff from suing a state official in his official capacity for monetary damages, but does not prohibit a plaintiff from suing a state official in his official capacity for prospective injunctive relief.  *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir. 1993)(citations omitted).  Thus, to the extent that Manly brought claims for prospective injunctive relief against individually-named Defendants in their official capacities, such claims would not barred by the Eleventh Amendment.  However, Manly indicates that he is seeking $2,000,000.00 in damages, that the prospective injunctive relief he is seeking relates to "the emotional, physical and financial suffering and damages done to [Manly's] lifestyle, family-life, career, and child due to the constitutionally unlawful actions of the defendants over the course of many years."  (Memo 12).  Further, Manly does not indicate with any specificity any prospective injunctive relief he is seeking.  In addition, as noted above and as further discussed below, even if Manly had specified the injunctive relief he was seeking, Manly has failed to state any claims upon which relief can be granted against the individually-named Defendants.

### III. Whether Manly Has Stated any Claims Upon Which Relief Can Be Granted

Defendants argue that Manly has not stated any claims upon which relief can be granted.

### A. Constitutional Claims Related to Defendants' Enforcement of the Order

Manly argues that IDHFS violated his constitutional rights in enforcing the Order based on the alleged invalidity of the Order and the manner in which it was enforced.

### 1. Validity of the Order

Manly argues that the Order is invalid because the Circuit Court lacks jurisdiction over him and because he entered into the Order under duress. As indicated above, the *Rooker-Feldman* doctrine bars the court's consideration of such arguments. However, even if the Court could consider Manly's arguments relating to the validity of the Order, such arguments are without merit. Manly argues that the Order is invalid because he is not under the jurisdiction of the Circuit Court. However, Manly admitted in his complaint that he submitted to the jurisdiction of the Circuit Court with respect to the entry of the Order. In addition, while Manly alleges that on January 12, 2009, a Circuit Court judge stated that Manly was "out of his jurisdiction," (Compl. 2), Manly does not allege that the judge vacated or otherwise

overturned the Order.

Manly also argues that the Order is invalid because he entered into the Order "under duress and threat of imprisonment, an act of coercion." (Resp. 3). However, Manly does not allege such facts in his complaint, and instead adds these facts in his response to Defendants' motions. In ruling on a Rule 12(b)(6) motion, a court cannot consider materials outside the pleadings unless the court converts the motion into a motion for summary judgment and provides the parties with an opportunity to file additional documents. *See Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002)(stating that "Rule 12(b) requires that if the district court wishes to consider material outside the pleadings in ruling on a motion to dismiss, it must treat the motion as one for summary judgment and provide each party notice and an opportunity to submit affidavits or other additional forms of proof"). Thus, although Manly has introduced new facts in his response relating to the conditions under which the Order was entered, it is inappropriate for the court to consider such facts in ruling on the instant motion. Therefore, Manly's arguments relating to the invalidity of the Order are without merit, and Manly has failed to state any constitutional claims against IDHFS or IDHFS officials or employees based on the alleged invalidity of the Order.


2.  Enforcement of the Order

Manly argues that IDHFS improperly enforced the Order. Manly asserts that

officials for the IDHFS Licensing Project Office "failed to disclose their identities in written and verbal correspondence with [Manly]" and required Manly to provide his date of birth and social security number before they would assist him. (Compl. 3). Such facts do not create constitutional violations or give rise to any other cause of action under Illinois or federal law. Manly also claims that IDHFS did not give him sufficient time to respond to the letter he received on October 22, 2009. However, Manly alleges that the letter provided ten days in which to respond, and that he responded to the letter on October 23, 2009. Thus, Manly's argument relating to the sufficiency of time he had in which to respond to the IDHFS letter is without merit.

Manly also argues that IDHFS garnishment of his Benefits and threat to revoke his licenses was unlawful and in violation of Illinois statutes. Pursuant to 305 ILCS 5/10-17, IDHFS is permitted to garnish up to 50% of a child-support obligor's benefits if he is more than one month behind in paying his child support obligation. Pursuant to the Order, Manly was required to pay $202.00 per month in child support. (D Memo Ex. A). Manly alleges that after January 12, 2009, he stopped paying child support in conformity with the Order, and instead only paid a total of $712.20 in child support before IDHFS and IDES began to garnish his Benefits in October 2009. Manly also alleges that, of the $244.00 per week he received in Benefits, the IDHFS garnished $118.00 per week for past-due child support payments, which is less than 50% of his Benefits. In addition, pursuant to 305 ILCS 5/10-17-6, IDHFS was entitled to notify to state licensing agencies of Manly's past-

due child support obligation.  Therefore, Manly's arguments relating to the enforcement of the Order are without merit, and Manly has failed to state any constitutional claims against IDHFS or IDHFS officials or employees based on the their enforcement of the Order.

### B.  Constitutional Claims Related to Overpayment of Benefits

Manly argues that IDES violated his constitutional rights because IDES did not give Manly proper notice regarding the overpayment of Benefits, that the collection of the overpayment of Benefits is barred by a statute of limitations, and that the interview with Acosta was an interrogation.

### 1.  Notice

Manly argues that IDES' garnishment of Benefits was unconstitutional because he did not receive notice relating to the overpayment of Benefits until October 29, 2009.  However, Manly does not allege that IDES began to garnish his Benefits prior to that date.  Therefore, Manly received notice regarding the overpayment of Benefits prior to the commencement of the garnishment, and the fact that he did not receive notice before October 29, 2009 is irrelevant.  Therefore, Manly's argument relating to notice of the overpayment of Benefits is without merit, and Manly has failed to state any constitutional claims against IDES or IDES officials or employees based on the alleged lack of sufficient notice regarding the

overpayment of benefits.

## 2.  Statute of Limitations on Collecting Overpaid Benefits

Manly also argues that he believes the statutory limitation has run on the State of Illinois' ability to collect the overpaid Benefits.  However, Manly does not cite any case law or statutory authority, and his argument is purely speculative.  *See People ex rel. Dept. of Public Aid v. Dent*, 614 N.E.2d 376, 378 (Ill. App. Ct. 1993)(discussing doctrine of governmental immunity from statutes of limitations). Therefore, Manly's argument relating to the statute of limitations on collecting overpaid Benefits is without merit, and Manly has failed to state any constitutional claims against IDES or IDES officials or employees based on his statute of limitations argument.

## 2.  Interview by Acosta

Manly also argues that the interview with Acosta amounted to a violation of his due process rights because it was an interrogation.  We note that the entire purpose of the interview, even as alleged in the complaint, was to question Manly regarding his discharge from employment and his eligibility to receive Benefits. (Compl. Ex. V).  Manly does not allege in his complaint that he was in custody, that he felt he couldn't leave the interview, that any law enforcement officers were present at any time, or that he was ever accused of committing a crime.  Instead,

Manly offers only his subjective view regarding the nature of the interview. Therefore, Manly has failed to state any constitutional claims against IDES or IDES officials or employees based on the interview.


C.  Other Claims

Manly has also brought claims against Defendants for violation of international law, violation of RICO, intentional infliction of emotional distress, identity theft, fraud, conspiracy, and violations of the FDCPA.  Even construing Manly's complaint liberally and accepting all of the allegations in the complaint as true, Manly has not alleged sufficient facts to "state a claim to relief that is plausible on its face."  *Iqbal*, 129 S.Ct. at 1949.  Even if Manly had alleged sufficient facts with respect to the state law claims, as a matter of discretion, we would decline to exercise supplemental jurisdiction over state law claims.  *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).  Therefore, we grant Defendants' motions to dismiss.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motions to dismiss.


_____

Samuel Der-Yeghiayan

United States District Court Judge


Dated:  December 14, 2010